IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: |
| v. | ) ) | **C O M P L A I N T** |
| (1) PAYCOM PAYROLL, LLC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

**NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act, as amended, (ADA) and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Katie Jorgenson, who was adversely affected by such practices. As alleged with greater particularity below, Defendant Paycom Payroll, LLC violated the ADA by failing to make reasonable accommodations to Jorgenson's disability-related physical limitations and by terminating her employment on the basis of disability.

**JURISDICTION AND VENUE**

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.

§§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper in this Court because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

**PARTIES**

3.      Plaintiff, the Equal Employment Opportunity Commission (Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Paycom Payroll, LLC (Paycom), a for-profit foreign limited liability company, has continuously been doing business in the State of Oklahoma and the City of Oklahoma City, and has continuously had at least 15 employees.

5.      At all relevant times, Paycom has continuously been an employer engaged in industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

6.      At all relevant times, Paycom has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Katie Jorgenson timely filed a charge of discrimination, Charge No. 564-2025-02217, with the Commission. The charge alleged violations of the ADA by Paycom.

8.      The Commission provided Paycom with timely notice of the charge.

9.      On March 3, 2026, the Commission issued to Paycom a Letter of Determination finding reasonable cause to believe that Paycom violated the ADA.

10.      The Commission invited Paycom to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

11.      The Commission engaged in communications with Paycom to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12.      The Commission was unable to secure from Paycom a conciliation agreement acceptable to the Commission.

13.      On or about May 19, 2026, the Commission issued Notice of Failure of Conciliation to Paycom.

14.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

15.      Katie Jorgenson has a medically documented, severe anaphylactic food allergy, specifically to onions. Airborne exposure, taste, or contact with onions can cause

3

her to have severe anaphylaxis requiring emergency treatment. Without prompt intervention, her condition substantially limits major life activities, including respiratory function, breathing, eating, and speaking.

16.    In April 2024, Jorgenson applied for a Benefits Coordinator position with Paycom and disclosed her severe onion allergy during her interview.

17.    Paycom hired Jorgenson for the position, and she began work on May 20, 2024. Jorgenson explained her severe allergy to Paycom officials during her orientation and to her team lead, Izaak Carrera.

18.    Jorgenson worked in a large, multi-floor office building, in a cubicle on the third floor. She performed all her work at her desk on a computer.

19.    As a Benefits Coordinator, Jorgenson met with clients via Zoom to assist them with transferring benefits information into Paycom's software.

20.    Jorgenson's work was self-directed with minimal supervision.

21.    Jorgenson was qualified for her position and performed her duties satisfactorily.

22.    On May 23, 2024, coworkers carrying onion burgers passed near Jorgenson's cubicle. Jorgenson smelled the onions and suffered an anaphylactic reaction that required her to leave work and use emergency medication. Izaak Carrera notified HR Business Partner Tammy Posey and Supervisor Megan Rawls.

23.    The next day, Jorgenson was again exposed to onions in the workplace, and she required treatment from paramedics onsite.

24.     On the morning of May 28, 2024, Jorgenson sent an email to HR requesting accommodation, stating she is "deathly allergic to onions" and that her prior anaphylactic reactions occurred when coworkers had foods containing onions in her vicinity.

25.     Also on May 28, 2024, Jorgenson asked Rawls if she could work in a secluded room during lunch hours to avoid exposure to coworkers' food. Rawls contacted HR and asked if there was a room Jorgenson could "safely use … and be separated from the threat of an allergic reaction."

26.     At Rawls's request, HR approved Jorgenson's temporary use of a private workspace from 10:00 a.m. to 2:00 p.m. and provided forms for Jorgenson and her medical provider to complete.

27.     Jorgenson experienced additional onion exposures in the workplace on May 30, June 5, and June 6, 2024.

28.     Despite their knowledge that the limited accommodations they provided to Jorgenson did not effectively or adequately limit her exposure to onions in the workplace, Paycom's HR officials failed to take any other steps to protect Jorgenson from exposure.

29.     On June 10, 2024, Jorgenson was again exposed to onions in the workplace and suffered a severe anaphylactic reaction, requiring an ambulance to transport her to the hospital.

30.     On June 11 and 13, 2024, Jorgensen submitted medical documentation from her doctor which emphasized the dangers of onion exposure and recommended assigning her to an enclosed office away from food areas or permitting her to work from home.

31. Despite the recommendation from Jorgenson's medical provider, Paycom officials refused to provide the recommended accommodations.

32. Instead, Paycom officials told Jorgenson to wear a mask and carry an EpiPen. At the urging of Jorgenson's managers, Paycom also relocated Jorgenson to a room on a different floor with fewer employees, but the room was approximately fifteen feet from a breakroom where employees routinely had food. Paycom did not make any effort to notify individuals who used the breakroom about Jorgenson's allergy or to otherwise protect Jorgenson from onion exposure.

33. On June 17, 2024, Jorgenson was again exposed to onions in the workplace and suffered an anaphylactic reaction.

34. On June 18, 2024, Jorgenson told a Paycom HR official that she wanted to work without continued reactions, and that Paycom's reasonable accommodation request process was huge and frustrating. Jorgenson also indicated her doctor would provide a letter explaining why a standard surgical mask recommended by Paycom would not protect her from onion exposure.

35. Later that day, Jorgenson was exposed to onions in the workplace when Paycom catered food with onions to the third floor and employees carried that food to the breakroom by her work area. Jorgenson's reaction required multiple rounds of EpiPen administration and other medical intervention before her condition stabilized.

36. That same day, an in-house attorney for Paycom told HR officials to stop discussing potential accommodations for Jorgenson until they received further guidance from the attorney or senior management.

6

37. On June 19, 2024, Paycom terminated Jorgenson, telling her it was for her "health and wellness."

38. Paycom terminated Jorgenson without waiting for additional documentation that she offered, without consulting with her physician or any other expert, and without attempting other reasonable accommodation options.

## STATEMENT OF CLAIMS

## COUNT I

### (ADA – Failure to Accommodate)

39. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

40. Jorgenson is a qualified individual with a disability as defined in the ADA because she suffers from a severe anaphylactic food allergy, which substantially limits one or more major life activities and the operation of one or more bodily systems and organs.

41. Paycom was aware that exposure to onions, including airborne exposure, causes Jorgenson to suffer debilitating symptoms.

42. Jorgenson is qualified and able, with reasonable accommodation, to perform the essential functions of the position of Benefits Coordinator at Paycom.

43. Jorgenson asked Paycom for reasonable accommodation to prevent or substantially limit her exposure to onions while performing her job.

44. Paycom engaged in unlawful employment practices in violation of Section 102(a) and (b)(5)(A),(B) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5)(A),(B),

7

by refusing to provide reasonable accommodation for Jorgenson's known physical limitations, culminating in the termination of her employment because of her disability.

45.    As a result of Paycom's unlawful conduct, Jorgenson was repeatedly exposed to onions at work, triggering life-threatening allergy attacks. Paycom knew about this recurring exposure, which was both preventable and foreseeable, yet failed to take meaningful steps to accommodate her.

46.    Providing Jorgenson reasonable accommodation to prevent or substantially limit her exposure to onions would have enabled Jorgenson to perform the Benefits Coordinator job and would not have imposed an undue hardship on the operation of Paycom's business.

47.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Jorgenson.

48.    The effect of the practices complained of herein has been to deprive Jorgenson of equal employment opportunities because of her disability.

49.    As a direct and proximate result of the practices complained of in the foregoing paragraphs, Jorgenson has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT II

### (ADA – Discriminatory Discharge)

50.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

51.     Paycom engaged in unlawful employment practices in violation of Section 102(a) and (b)(5) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5), by terminating the employment of Jorgenson because of her disability.

52.     The effect of the practices complained of herein has been to deprive Jorgenson of equal employment opportunities because of her disability.

53.     As a direct and proximate result of the practices complained of in the foregoing paragraphs, Jorgenson has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

54.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Jorgenson.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Paycom, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to employ a qualified individual with a disability because he or she needs a reasonable accommodation to perform the duties of his or her position.

9

B.      Order Paycom to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Paycom to make whole Katie Jorgenson by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place instatement of Jorgenson.

D.      Order Paycom to make whole Katie Jorgenson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.      Order Paycom to make whole Katie Jorgenson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

F.      Order Paycom to pay Katie Jorgenson punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

10

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

ANDREA G. BARAN
Regional Attorney

LAUREN W. JOHNSTON, OK Bar #22341
Assistant Regional Attorney

/s/ Patrick J. Holman
PATRICK J. HOLMAN, OK Bar #21216
Senior Trial Attorney
U.S. Equal Employment
Opportunity Commission
Oklahoma City Area Office
215 Dean A. McGee Ave., Ste. 524
Oklahoma City, OK 73102
Holman Phone: (405) 666-0374
Johnston Phone: (405) 666-0379
patrick.holman@eeoc.gov
lauren.johnston@eeoc.gov
andrea.baran@eeoc.gov

**ATTORNEYS FOR PLAINTIFF
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**